**CALLAHAN & BLAINE, APLC**
Daniel J. Callahan (Bar No. 91490)
Edward Susolik (Bar No. 151081)
Richard T. Collins (Bar No. 166577)
Damon D. Eisenbrey (Bar No. 215927)
Adrian L. Canzoneri (Bar No. 265168)
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiff 12 South, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

12 SOUTH, LLC, a California limited liability company,

    Plaintiff,

    v.

UNITEDHEALTH GROUP, INC., a Delaware corporation;
UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation;
UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation;
UHC OF CALIFORNIA, a California corporation;
UNITED HEALTHCARE SERVICES LLC, a Delaware limited liability company;
UNITED BEHAVIORAL HEALTH, INC., a California corporation;
OPTUMINSIGHT, INC., a Delaware corporation;
OPTUM SERVICES, INC., a Delaware corporation;
OPTUM, INC., a Delaware corporation;
VIANT, INC., a Nevada corporation;
MULTIPLAN, INC., a New York corporation; and
DOES 1 through 25, inclusive,

    Defendants.

Case No.:

Assigned to Judge James V. Selna

Consolidated with:

In re: Out of Network Substance Use Disorder Claims Against UnitedHealthcare, Case No. 8:19-cv-020975-JVS-DFMx (Lead Case)

| | |
|---|---|
| 8:19-cv-02082 | 8:19-cv-02083 |
| 8:19-cv-02084 | 8:19-cv-02085 |
| 8:19-cv-02086 | 8:19-cv-02087 |
| 8:19-cv-02088 | 8:19-cv-02372 |
| 8:20-cv-00136 | 8:20-cv-00137 |
| 8:20-cv-00138 | |

**COMPLAINT FOR:**

1. **BREACH OF WRITTEN CONTRACT**
2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
3. **BREACH OF IMPLIED CONTRACT**
4. **BREACH OF ORAL CONTRACT**
5. **PROMISSORY ESTOPPEL**
6. **QUANTUM MERUIT**
7. **UNFAIR COMPETITION**

**DEMAND FOR JURY TRIAL**

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

This Document relates to:

"PLAINTIFF 12 SOUTH, LLC ONLY"

Plaintiff 12 South, LLC hereby alleges against Defendants UnitedHealth Group, Inc., United HealthCare Services, Inc., United HealthCare Insurance Company, UHC of California, United HealthCare Services LLC, United Behavioral Health, Inc., OptumInsight, Inc., Optum Services, Inc., Optum, Inc., Viant Inc., MultiPlan, Inc., and Does 1 through 25, as follows:

## THE PARTIES

1.      Plaintiff 12 South, LLC (TIN 47-5125464) ("Plaintiff") is, and at all relevant times herein mentioned was, a California limited liability company qualified to do business in the State of California.  Plaintiff is, and at all relevant times herein was, a mental health and alcoholism and substance use disorder treatment provider.  Plaintiff is in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society.  Plaintiff is, and at all relevant times herein was, certified by the California Department of Health Care Services ("DHCS") to operate an alcoholism and substance use disorder treatment program.  Plaintiff is, and at all relevant times herein was, accredited by The Joint Commission, Behavioral Health Care Accreditation Program ("JCAHO"), and has a Centers for Medicare and Medicaid Services ("CMS"), Clinical Laboratory Improvements Amendments ("CLIA"), certificate of waiver.

2.      On information and belief, Defendant UnitedHealth Group Inc. ("UHG") is a Delaware corporation which conducts insurance operations throughout California.  UHG issues health insurance and issues, administers, and makes coverage and benefit determinations, and develops and applies guidelines in making benefit determinations related to health care policies nationally through its various wholly-owned and/or controlled subsidiaries, controlled agents and/or undisclosed

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  principals, including, but not limited to, Defendants United HealthCare Services,

2  Inc., United HealthCare Insurance Company, UNC of California, United HealthCare

3  Services LLC, United Behavioral Health, Inc., OptumInsight, Inc., Optum Services,

4  Inc., Optum, Inc., Viant Inc., and MultiPlan, Inc. (collectively "Defendants" or

5  "UnitedHealthcare"). Plaintiff is informed and believes, and based thereon alleges,

6  that UHG is licensed and/or regulated by the California Department of Insurance

7  ("CDI") and/or the California Department of Managed Health Care ("CDMHC") to

8  transact the business of insurance in the State of California, is in fact transacting the

9  business of insurance in the State of California, and is thereby subject to the laws

10  and regulations of the State of California. Plaintiff is informed and believes, and

11  based thereon alleges, that UHG operates as and owns the trademark

12  "UnitedHealthcare."

13      3.     On information and belief, Defendant United HealthCare Services, Inc.

14  ("UHS") is a Minnesota corporation which conducts insurance operations

15  throughout California. UHS provides health benefit programs for individuals and

16  families, employers, military service personnel, retirees and their families, and

17  serves as the operating division of UHG and its subsidiaries and affiliates. Plaintiff

18  is informed and believes, and based thereon alleges, that UHS is licensed and/or

19  regulated by the CDI and/or the CDMHC to transact the business of insurance in the

20  State of California, is in fact transacting the business of insurance in the State of

21  California, and is thereby subject to the laws and regulations of the State of

22  California.

23      4.     On information and belief, Defendant United Healthcare Insurance

24  Company ("UHI") is a Connecticut corporation which conducts insurance

25  operations throughout California. UHI underwrites many of the UnitedHealthcare

26  individual and family insurance products and participates in the claims

27  administration process related to policies insured and/or administered by UHG and

28  its subsidiaries and affiliates. Plaintiff is informed and believes, and based thereon

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 2 -
COMPLAINT

alleges, that UHG is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

5.     On information and belief, Defendant UHC of California d/b/a United Health Care of California ("UHCC") is a California corporation located in Cypress, California.  UHCC conducts administration process and coverage determinations on policies insured/administered by UHG and its subsidiaries and affiliates.  Plaintiff is informed and believes, and based thereon alleges, that UHCC is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

6.     On information and belief, Defendant UnitedHealthcare Service LLC ("UHSLLC") is a Delaware limited liability company with its principal office in Cypress, California.  UHSLLC provides administrative, financial and managerial services to UHG and its subsidiaries and affiliates.  Plaintiff is informed and believes, and based thereon alleges, that UHSLLC is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

7.     On information and belief, Defendant United Behavioral Health, Inc. ("UBH") is a California corporation with its principal place in San Francisco, California.  UBH provides and/or manages mental health and substance use disorder benefits for members/insureds of UHG and its subsidiaries and affiliates, and is responsible for making benefit coverage determinations for mental health and substance use disorder services that are provided to said members/insureds.  UBH sometimes operates as OptumHealth Behavioral Solutions and under the brand name

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Optum U.S. Behavioral Health, California, doing business as OptumHealth Behavioral Solutions of California.  Plaintiff is informed and believes, and based thereon alleges, that UBH is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

8.      On information and belief, Defendant OptumInsight, Inc. ("OII") is a Delaware corporation which conducts insurance operations throughout California. OII, formerly known as Ingenix, provides health care data management for UBH and its subsidiaries and affiliates.  Plaintiff is informed and believes, and based thereon alleges, that OII is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

9.      On information and belief, Defendant Optum Services, Inc. ("Optum") is a Delaware corporation which conducts insurance operations throughout California.  Optum is a health services business serving the health care marketplace, including payers and health care providers, and provides shared claim handling and processing services for UHG and its subsidiaries and affiliates.  Optum sometimes operates as Optum and Optum Shared Solutions.  Plaintiff is informed and believes, and based thereon alleges, that Optum is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

10.     On information and belief, Defendant Optum, Inc. ("OI") is a Delaware corporation which conducts insurance operations throughout California.  OI is a health services business serving the health care marketplace, including payers and UHG and its subsidiaries and affiliates, through its OptumHealth, OptumInsight and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

OptumRx businesses. Plaintiff is informed and believes, and based thereon alleges, that OI is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

11. On information and belief, Defendant Viant Inc. ("Viant") is a Nevada corporation which conducts insurance operations throughout California. Viant provides health care payment solutions and offers auditing and reimbursement of behavioral health and substance use disorder claims and costs, as well as prepayment services such as treatment facility bill review and professional negotiation, on policies insured/administered by UHG and its subsidiaries and affiliates. Plaintiff is informed and believes, and based thereon alleges, that Viant is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

12. On information and belief, Defendant MultiPlan, Inc. ("MPI") is a New York corporation which conducts insurance operations throughout California and at all times relevant herein, operated as and/or controls its subsidiary NCN LLC which operates as National Care Network. MPI is a provider of healthcare cost management solutions, specializing in providing claim cost management solutions for controlling the financial risks associated with health care bills on policies insured/administered by UHG and its subsidiaries and affiliates. MPI also offers preferred provider organization network solutions for accessing hospitals, ancillary care facilities, treatment facilities, and health care professionals for the benefit and at the control and direction of UHG and its subsidiaries and affiliates. Plaintiff is informed and believes, and based thereon alleges, that MPI is licensed and/or regulated by the CDI and/or the CDMHC to transact the business of insurance in the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

13.     Plaintiff does not know the true names and capacities of Defendants sued as Does 1 through 25, inclusive, and therefore sues such Defendants with such fictitious names.  Plaintiff will amend this Complaint, if necessary, to allege their true names and capacities when they have been ascertained.  Plaintiff is informed and believes that each of the named and fictitiously named Defendants are involved in and responsible for the events, transactions and/or occurrences alleged in the Complaint, as well as the herein alleged damages caused to Plaintiff.

14.     Plaintiff is informed and believes that, at all relevant times, each of the Defendants was and is the agent, servant, representative, undisclosed principal and/or alter ego of each of the other Defendants, and in doing the things herein alleged, each of the Defendants was acting in the scope of its authority as such agent, servant, representative, undisclosed principal and/or alter ego, and with the permission and consent of each of the other Defendants.

15.     Plaintiff is informed and believes that, at all relevant times, Defendants are the alter egos of the other Defendants, have comingled assets, have comingled business operations, have undercapitalized operations, have ignored corporate formalities, and have exercised such dominion and control over the operations of the other Defendants that it would be unjust to permit such Defendants to avoid individual liability.  Plaintiff is further informed and believes, that a unity of interest and ownership exists between Defendants, that any individuality and separateness between Defendants have ceased, and that Defendants are the alter egos of one another.  On information and belief, Plaintiff understands and believes that Defendants share the same common ownership, places of business, managements, and operate as a single enterprise.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

16.     Plaintiff is informed and believes that, at all relevant times, each of the Defendants formed and operated a conspiracy with each of the other Defendants to perform the acts alleged herein, in furtherance of a common design to place profits over patients and damage substance use disorder and mental health treatment providers, including Plaintiff, and with knowledge that the conduct alleged herein of each of the Defendants constituted violations of law and provided substantial assistance or encouragement to each other to so act against insured patients and substance use disorder and mental health treatment providers, including Plaintiff.

## BRIEF STATEMENT OF THE CASE

17.     Plaintiff is an out-of-network mental health and substance use disorder treatment provider.  Plaintiff is in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society.  Plaintiff provided medically necessary, verified, preauthorized and covered substance use disorder and mental health treatment to 18 individuals with health insurance that was marketed, sold, insured and/or administered by Defendants.  The policies pay benefits for out-of-network substance use disorder and mental health treatment at all levels of care, including, but not limited to, detoxification and residential treatment, partial hospitalization ("PHP"), intensive outpatient ("IOP"), outpatient treatment ("OP"), counseling and behavioral therapies, and clinical laboratory services, at seventy percent (70%) of covered charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay hundred percent (100%).

18.     Plaintiff obtained a written assignment of benefits from each of the 18 patient-insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiff not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  Moreover, Defendants confirmed, represented and warranted to Plaintiff through the required verification of benefits process and, if necessary, the preauthorization process, that each of the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

patient-insureds and their respective treatment and services were covered by health insurance policies issued, insured and/or administered by Defendants and that Plaintiff would be properly paid for treating Defendants' insureds/members.  At all times relevant herein, Defendants knew that Plaintiff was treating – and would continue to treat – Defendants' insureds/members, and that Plaintiff was not treating Defendants' insureds/members for free.

19.    Plaintiff submitted its claims to Defendants for payment.  Defendants were obligated – under the law and the policies – to pay Plaintiff 70% of its billed charges (minus any cost-sharing amounts) for the substance use disorder and mental health treatment and services that Plaintiff rendered to Defendants' insureds/members, all 18 of them, until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to Plaintiff during the verification of benefits process for each of the 18 insureds at issue herein, that the out-of-network policy benefits paid by Defendants to out-of-network treatment providers, like Plaintiff, for all levels of substance use disorder and mental health treatment is 70% of covered expenses (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.

20.    Instead of paying Plaintiff per the policies and the law and in accordance with Defendants' agreements, representations and promises to Plaintiff, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Plaintiff 1.3% of its billed charges for the substance use disorder and mental health treatment and services rendered to Defendants' insureds/members.  It was only after Plaintiff rendered the substance use disorder and mental health treatment and services at issue that Defendants breached the policies, violated the law, reneged on their promises and representations to Plaintiff and refused to properly compensate Plaintiff for the treatment and services rendered

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  to Defendants' insureds/members.

2  21.   During the claim submission and payment process, Defendants put

3  Plaintiff on various pre-payment review and program integrity audits, and through

4  their various departments, Defendants repeatedly requested the same documents and

5  information from Plaintiff, over and over again.  Plaintiff complied with

6  Defendants' repetitive requests and despite being released from the audits and

7  promised payment pursuant to the policies – and in some cases repricing agreements

8  – Defendants refused to properly reimburse Plaintiff for the substance use disorder

9  and mental health treatment and services that Plaintiff provided to Defendants'

10  insureds/members.  Defendants' audits, repetitive document and information

11  requests and promises of payment to Plaintiff were false and fraudulent and were

12  implemented by Defendants, and each of them, as a pretext to illegally and

13  fraudulently delay and deny Plaintiff (and hundreds of other substance use disorder

14  and mental health treatment centers and laboratory providers) payment in

15  accordance with the law and policies.

16  22.   As a result, Plaintiff has suffered and continues to suffer general and

17  incidental damages according to proof, including the benefits owed, the interruption

18  in Plaintiff's business, lost business opportunities, lost profits and other

19  consequences, and moreover, Plaintiff is entitled to injunctive relief and statutory

20  and prejudgment interest and attorney's fees against Defendants, and each of them,

21  for their misconduct and bad faith business and insurance practices.

22  **AMERICA'S OPIOID AND ADDICTION EPIDEMIC**

23  23.   Now, as never before, there is a critical need for access to treatment for

24  substance use disorders.  The Substance Abuse and Mental Health Services

25  Administration (SAMHSA) estimates that in 2014, 20.2 million adult Americans, or

26  8.4 percent of the adult population suffered from a substance use disorder within the

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

1  past year.[1]  According to the President's Commission on Combatting Drug
2  Addiction and the Opioid Crisis (November 2017), heroin overdose deaths increased
3  four-fold from 2010 to 2015, while overdose deaths due to prescription opioids
4  consistently outpaced even the disturbingly high heroin overdose rates.[2]  Drug
5  overdoses now cause more deaths than either car accidents or guns, and those
6  suffering from substance use disorders are at the highest risk.

7  24.  On average, 130 Americans die every day from an opioid overdose.
8  The opioid crisis has and continues to destroy lives and devastate families and
9  communities.[3]  It is the deadliest drug crisis in United States history and it is only
10  getting worse.[4]  In 2017 alone, California lost 2,196 lives to the opioid epidemic.
11  Timely access to life-sustaining and life-saving treatment and continuing care for
12  substance use and mental health disorders is critical to preventing these deaths and
13  allowing people to achieve long-term recovery and to return to their families, friends
14  and communities as healthy, productive and contributing members of society.[5]

15

16  [1] *See* Rachel N. Lipari & Struther L. Van Horn, Trends in Substance Use Disorders in Adults 18
17  and Older (June 29, 2017), retrieved on May 23, 2019 from
   https://www.samhsa.gov/data/sites/default/files/report_2790/ShortReport-2790.html.

18  [2] *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report,
   at p. 32, retrieved on May 23, 2019 from
19  https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-
   2017.pdf.

20  [3] *See* Centers for Disease Control and Prevention, Understanding the Epidemic, retrieved on May
21  28, 2019 from https://www.cdc.gov/drugoverdose/epidemic/index.html.

22  [4] *See* California Department of Public Health, Patterns of Opioid-Related Overdose Deaths in
   California, 2011-2017 (March 2019), retrieved on June 12, 2019 from
   https://www.cdph.ca.gov/Programs/CCDPHP/DCDIC/SACB/CDPH%20Document%20Library/Pr
23  escription%20Drug%20Overdose%20Program/Injury%20Data%20Brief%20Opioid%20Overdose
   %20Deaths%202011-2017_ADA.pdf.

24  [5]  The human impact of the opioid epidemic – from babies born dependent, the emotional toll on
25  individuals with a substance use disorder, and that of their families and communities, to the tens of
   thousands of lives cut short each year – has been tremendous.  Now, reports show that the
26  economic impact has been just as shocking, with the drug crisis costing the U.S. economy $1
   trillion since 2001 and likely to cost the economy an additional $500 billion by 2020 if the current
27  rates of addiction and overdose remain steady.  See Altarum, Solutions to Advance Health:
   Economic Toll of Opioid Crisis in U.S. Exceeded $1 Trillion Since 2001 (February 13, 2018),
28  retrieved on June 5, 2019 from https://altarum.org/news/economic-toll-opioid-crisis-us-exceeded-
   1-trillion-2001.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

25.     Addiction is recognized as a chronic, relapsing brain disorder characterized by compulsive drug seeking, continued use despite harmful consequences, and long-lasting changes in the brain.  Addiction is considered both a complex brain disorder and a mental illness.  The brain changes can be long lasting and can lead to many harmful, often self-destructive, behaviors.  Addiction is the most severe form of a full spectrum of substance use disorders, and is a medical illness caused by repeated misuse of a substance or substances.[6]  Without treatment and engagement in recovery activities, addiction is progressive and can result in unemployment, homelessness, disability and premature death.

26.     Substance use disorder treatment is difficult and the challenges of recovery from addiction are many, which can involve cycles of recurrence and remission before long-term recovery is realized.  Timely access to treatment and continuing care, including detoxification and residential treatment, intensive outpatient and outpatient services, counseling and behavioral therapies, social support and supportive sober living environments, are critical for people to recover from addiction and reclaim active and meaningful lives.  Clinical laboratory services are recognized as an appropriate and important diagnostic procedure in substance use disorder and mental health treatment as such services promote prevention, diversion, early detection, and lifelong recovery from addiction.  Such testing is designed to provide accurate results that help physicians and treatment clinicians create a scientifically designed drug monitoring strategy for optimal treatment outcomes, which includes testing for accurate prescription therapy and medication

---

[6] *See* National Institute of Drug Addiction, The Science of Drug Use and Addiction: The Basics, retrieved on May 29, 2019 from https://www.drugabuse.gov/publications/media-guide/science-drug-use-addiction-basics; *see also*, American Society of Addiction Medicine, Public Policy Statement: Definition of Addiction, retrieved on June 13, 2019 from https://www.asam.org/docs/default-source/public-policy-statements/1definition_of_addiction_long_4-11.pdf?sfvrsn=a8f64512_4.

1  assisted treatment.[7]

2      27.    Families and individuals purchase health insurance to help cover the

3  costs of health care, including the costs of substance use disorder and mental health

4  treatment.  Health insurance is supposed to provide people with peace of mind and

5  security, and provide them with access and options for life-sustaining and life-

6  saving health care while preventing families and individuals from experiencing

7  financial crises, such as bankruptcy or home foreclosure, or being forced to choose

8  between paying for rent, utilities and food or paying for necessary health care costs.

9      28.    Traditionally, insurers and employers have covered treatment for

10  mental health conditions, including substance use disorders, less favorably than

11  treatment for physical health conditions, including higher cost-sharing obligations

12  for patients, more restrictive limits on the number of inpatient days and outpatient

13  visits, and more onerous prior authorization requirements.  To address this unequal

14  treatment, Congress first passed a mental health parity law in 1996, and many states

15  followed suit in the following decade by passing laws of their own.  Among other

16  limitations, however, the 1996 act did not address the treatment of substance use

17  disorders.  Congress addressed this gap in passing the historic Paul Wellstone and

18  Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA),

19  42 U.S.C. § 300gg-26, which, among other things, prohibits most plans governed by

20  the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

21  1001 et seq., from imposing different treatment limits, cost-sharing and in-network

22  and out-of-network coverage on mental health and substance use disorder treatment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

26  _____

27  [7] *See* American Society of Addiction Medicine, Public Policy Statement on Drug Testing as a Component of Addiction Treatment and Monitoring Programs and in other Clinical Settings, retrieved on May 29, 2019 from https://www.asam.org/docs/default-source/public-policy-

28  statements/1drug-testing---clinical-10-10.pdf.

than are imposed on other medical and surgical services.[8]  Furthermore, ERISA requires fiduciaries to act solely in the interests of plan participants and beneficiaries, and to decide claims for health care benefits in accordance with plan documents and under a full and fair procedure.

29.     The Patient Protection and Affordable Care Act of 2010 ("PPACA"), 42 U.S.C. §§ 18001, et seq., also known as the Affordable Care Act or Obamacare, requires a range of health polices, both inside and outside of the exchanges, to provide a core package of essential health benefits including mental health and substance use disorder services and laboratory services.  42 U.S.C. § 18022.  The PPACA extends the impact of the MHPAEA so that many health policies must offer coverage for mental health and substance use disorder services and laboratory services with at least an equal level of benefits as the policies offer for the treatment of medical and surgical benefits.  However, as President Donald J. Trump's commission on the opioid crisis wrote in its November 2017 report, "health insurers are not following the federal law requiring parity in the reimbursement for mental health and addiction [;] [t]hey must be held responsible."[9]

## DEFENDANTS' SCHEME TO DENY ACCESS AND COVERAGE FOR CRITICALLY-NEEDED SUBSTANCE USE DISORDER TREATMENT

30.     Despite the above statutory requirements, and the obvious individual and public health interests in timely access to and coverage for substance use

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[8]  California has its own Mental Health Parity Act ("MHPA"), codified in Insurance Code section 10144.5 and Health and Safety Code section 1374.72, which, like the MHPAEA, requires mental health care coverage to be provided "under the same terms and conditions applied to other medical conditions."  California law also requires health care plans to "provide all covered mental health and substance use disorder benefits in compliance with the [MHPAEA] and all rules, regulations, and guidance issued" pursuant to federal laws.  Cal. Ins. Code §§ 10144.4, 10112.27; Cal. Health & Safety Code § 1374.76.

[9]  *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report, at pp. 9 and 122, retrieved on May 23, 2019 from https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-2017.pdf.  Roster of Commissioners include Governor Chris Christie, Chairman, Governor Charlie Baker, Governor Roy Cooper, Congressman Patrick J. Kennedy, Professor Bertha Madras, Ph.D., Florida Attorney General Pam Bondi.

disorder and mental health treatment and laboratory services, Defendants, and each of them and their controlled agents and/or undisclosed principals, are engaged in unfair, unreasonable, incomplete, fraudulent and systematic policies, practices and decisions (against the substance use disorder and mental health treatment profession as a whole and Defendants' members/insureds in need of substance use disorder and mental health treatment) that have and continue to result in the unlawful and fraudulent denial, underpayment, delay and/or flat-out refusal to authorize and decide access, coverage and claims for mental health and substance use disorder treatment and laboratory services for patients whose policies promise, and the law requires, access to and coverage for such services and benefits. Defendants' systematic practices have and continue to result in restrictive prior authorization requirements and restrictive limits on the number of substance use disorder and mental health treatment days and tests. Defendants' access, coverage and claims-handling policies, practices and decisions are imposing unlawful barriers between patients and life-saving substance use disorder and mental health treatment they desperately need. And Defendants are doing this in the middle of an opioid and addiction epidemic! Defendants' impermissible barriers to substance use disorder and mental health treatment and laboratory services must be removed and Defendants must be held responsible for placing profits over patients in a life and death situation.

31.    Defendants' substance use disorder and mental health treatment and laboratory access, coverage and claims-handling policies, practices and decisions as a whole violate the law and the policy documents. For instance, Plaintiff is informed and believes, and based thereon alleges, that Defendants refuse to authorize access and coverage for detoxification and residential substance use disorder treatment because a facility does not have an optional state incidental

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

medical license.[10]  Plaintiff is informed and believes, and based thereon alleges, that Defendants unreasonably limit the number of detoxification and residential treatment days, and impermissibly and unreasonably require preauthorization for PHP and IOP treatment and then limits the number of treatment days at each level of care.[11]  Plaintiff is further informed and believes, and based thereon alleges, that Defendants reimburse detoxification, residential treatment, PHP and IOP levels of care at nominal percentages of the covered charges.  Moreover, Plaintiff is informed and believes, and based thereon alleges, that Defendants refuse to reimburse OP claims and refuse to reimburse claims for breathalyzer tests, counseling services and services of treatment case managers.  Further, Plaintiff is informed and believes, and based thereon alleges, that Defendants utilize illegal and overly restrictive medical necessity criteria and guidelines in order to deny claims and profit over the health and safety of their members/insureds, and utilize improper single bundled rates on claims for covered individuals in substance use disorder treatment.  In addition, Plaintiff is informed and believes, and based thereon alleges, that Defendants refuse to pay for claims at all levels of care based on purported overpayments for substance use disorder and mental health treatment of other patients covered by other

---

[10]  Cal. Health & Safety Code § 11834.026(a).  Moreover, California law provides that health insurers may not "in any manner … direct, participate in, or control the selection of the hospital or health facility … from who the insured secures services … except that an insurer may negotiate and enter into contracts for alternative rates of payment with institutional providers, and offer the benefit of these alternative rates to insures who select these providers." Cal. Ins. Code § 10133.

[11]  Under California law, once a health insurer authorizes a specific type of treatment covered under a plan and the provider has provided that treatment in good faith and pursuant to the authorization, the insurer cannot rescind or modify that authorization for any reason.  Cal. Ins. Code § 796.04; Cal. Health & Safety Code § 1371.8. Moreover, California law requires that where health insurers cannot provide their members/insureds access to needed healthcare providers on an "in-network" basis, the insurers shall pay any "out-of-network" provider the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its billed charges. Cal. Ins. Code § 10133.5; Cal. Code Regs. tit. 10, § 2240.1. Further, health insurers are required to reimburse health care providers at almost 100 percent of the billed charges for emergency services. Cal. Ins. Code § 10112.7; Cal. Health & Safety Code § 1317; Cal. Code Regs., tit. 28, § 1300.67.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

UnitedHealthcare policies.[12]   Plaintiff is also informed and believes, and based thereon alleges, that Defendants refuse to pay for clinical laboratory claims as either beyond the numerical limitation and/or simply not covered or reimbursable. Plaintiff is further informed and believes, and based thereon alleges, that Defendants make payments on claims based on inapplicable Medicare rates and demand refunds on other claims that it asserts should have been paid at inapplicable Medicare rates.[13]

32.     Plaintiff is informed and believes, and based thereon alleges, that Defendants' objective is to deny their members/insureds access to and coverage for critically-needed substance use disorder detoxification and residential treatment, limit the number of authorized detoxification, residential treatment, PHP and IOP substance use disorder and mental health treatment days, rush their members/insureds into OP substance use disorder and mental health treatment, refuse to reimburse OP claims, deny and/or underpay all other substance use disorder and mental health treatment and laboratory claims, and then demand refunds on paid claims and subject the remaining claims to improper cross-plan offsets and inapplicable Medicare rates, all in violation of the law and the policy documents and to the detriment of their members/insureds in need of life-saving substance use disorder and mental health treatment and to the detriment of substance use disorder and mental health treatment providers, like Plaintiff.

**DEFENDANTS' SCHEME SPECIFIC TO PLAINTIFF**

33.     Plaintiff is an out-of-network mental health and substance use disorder treatment provider.  Plaintiff is in the profession of helping individuals recover from

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[12]   *See Peterson v. UnitedHealth Group, Inc.* (8th Cir. 2019) 913 F.3d 769, 776 (rejecting UnitedHealthcare's interpretation of its policies as permitting cross-plan offsetting).

[13]   The California Department of Insurance found and concluded in its July 23, 2018 Order to Show Cause *In the Matter of the Certificate of Authority of Health Net Life Insurance Company* (CDI File No. UPA-2016-00005), that Medicare does not provide a rate for inpatient or outpatient substance use disorder treatment provider charges and that substituting a bundled per diem Medicare rate for such treatment charges violates state and federal parity laws.

mental health issues and addiction and return to their families and communities as productive and contributing members of society. Plaintiff provided medically necessary, verified, preauthorized and covered mental health and substance use disorder treatment to 18 individuals with health insurance that was marketed, sold, insured and/or administered by Defendants. The policies pay benefits for out-of-network substance use disorder and mental health treatment at all levels of care, including, but not limited to, detoxification and residential treatment, PHP, IOP, OP, counseling and behavioral therapies, and clinical laboratory services, at 70% of covered charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.

34.    Plaintiff obtained a written assignment of benefits from each of the 18 patient-insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiff not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. Moreover, Defendants confirmed, represented and warranted to Plaintiff through the required verification of benefits process and, if necessary, the preauthorization process, that each of the patient-insureds and their respective treatment and services were covered by health insurance policies issued, insured and/or administered by Defendants and that Plaintiff would be properly paid for treating Defendants' insureds/members. At all times relevant herein, Defendants knew that Plaintiff was treating – and would continue to treat – Defendants' insureds/members, and that Plaintiff was not treating Defendants' insureds/members for free.

35.    The treatment and claim documents concerning each of the subject 18 patient-insureds treated by Plaintiff contain personal health and treatment information protected by law from public disclosure pursuant to, inter alia, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Once a Protective Order is in place, Plaintiff will produce its claims data report to Defendants. The report will set forth the subject patient's initials and member

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    identification number, the service start and end dates, the amounts billed and paid,

2    and the outstanding balance.  With Plaintiff's company name and TIN, Defendants

3    can access a trove of information on each of Plaintiff's patients, including, but not

4    limited to, the patient's name, date of birth, gender, family relationships, name and

5    type of insurance plan/policy and state of issuance, dates of coverage, dates of

6    service, types and levels of care provided, billed amounts claimed, explanations of

7    benefits paid or denied, and appeals and grievances regarding claims denied.

8    Plaintiff is informed and believes that the information available to Defendants

9    through Plaintiff's company name and TIN is sufficient enough to apprise

10   Defendants of the substance of Plaintiff's claims.

11        36.    Plaintiff submitted its claims to Defendants for payment.  Defendants

12   were obligated – under the law and the policies – to pay Plaintiff 70% of its billed

13   charges (minus any cost-sharing amounts) for the mental health and substance use

14   disorder treatment that Plaintiff rendered to Defendants' insureds/members, all 18 of

15   them, until the deductible/out-of-pocket maximum is met at which time Defendants

16   pay 100%.  Defendants also advised and confirmed with Plaintiff during the

17   verification of benefits process for each of the 18 insureds at issue herein, that the

18   out-of-network policy benefits paid by Defendants to out-of-network treatment

19   providers, like Plaintiff, for all levels of substance use disorder and mental health

20   treatment is 70% of covered expenses (minus any cost-sharing amounts) until the

21   deductible/out-of-pocket maximum is met at which time Defendants pay 100%.

22        37.    Instead of paying Plaintiff per the policies and the law and in

23   accordance with Defendants' agreements, representations and promises to Plaintiff,

24   Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and

25   systematic polices, practices and decisions – with an emphasis on profits over

26   patients – and paid Plaintiff 1.3% of its billed charges for the substance use disorder

27   and mental health treatment and services rendered to Defendants'

28   insureds/members.  It was only after Plaintiff rendered the substance use disorder

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

and mental health treatment and at issue that Defendants breached the policies, violated the law, reneged on their promises and representations to Plaintiff and refused to properly compensate Plaintiff for the treatment and services rendered to Defendants' insureds/members.

38.     During the claim submission and payment process, Defendants put Plaintiff on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Plaintiff, over and over again.  Plaintiff complied with Defendants' repetitive requests and despite being released from the audits and promised payment pursuant to the policies – and in some cases repricing agreements – Defendants refused to properly reimburse Plaintiff for the substance use disorder and mental health treatment and services that Plaintiff provided to Defendants' insureds/members.  Defendants' audits, repetitive document and information requests and promises of payment to Plaintiff were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally and fraudulently delay and deny Plaintiff (and hundreds of other substance use disorder and mental health treatment centers and laboratory providers) payment in accordance with the law and policies.

39.     As a result, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, and moreover, Plaintiff is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them, for their misconduct and bad faith business and insurance practices.

40.     Defendants' conduct has had a severe and adverse effect on not only Plaintiff, but also on Defendants' insureds/members and the mental health and substance use disorder treatment profession as a whole.  Defendants' conduct has placed the lives of their insureds/members that are struggling with mental health and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

addiction in jeopardy, exposing the insured/member patients and their families to significant financial and health risk, while simultaneously destroying or significantly damaging Plaintiff and all similarly situated substance use disorder and mental health treatment providers.

41.    Defendants' conduct breached agreements with Plaintiff which arose when Plaintiff's patients assigned benefits to Plaintiff in writing, Defendants confirmed coverage and, when necessary, gave prior approval for the substance use disorder and mental treatment and services that Plaintiff provided to Defendants' insureds/members, and when Defendants promised that Plaintiff would be properly paid for treating Defendants' insureds/members.  Defendants' violated the implied covenant of good faith and fair dealing in said insurance contracts, rendering its actions in "bad faith."

42.    Upon information and belief, Plaintiff alleges that Defendants' conduct was wanton and willful, and undertaken to improve their balance sheet by placing profits over patients in a life and death situation.

43.    Defendants' practices were also unfair, fraudulent and unlawful under California's Unfair Competition Law ("UCL") in that, as a part of their scheme to not pay or underpay Plaintiff, and to prevent Plaintiff from learning of their scheme for as long as possible, they violated their claims handling obligations under California law by providing either no, baseless, false, or dilatory reasons for not paying or underpaying Plaintiff.  Plaintiff is thereafter entitled to injunctive relief and restitution under the UCL.

44.    Defendants' practices were similarly unfair, fraudulent and unlawful under state and federal law in that they violate the MHPAEA, while simultaneously constituting common law bad faith.  The MHPAEA is an antidiscrimination statute intended to ensure that coverage of mental health and substance abuse care and related laboratory services is in "parity" with coverage of medical and surgical care. Defendants, and each of them, have systematically treated substance use disorder

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1 | and mental health treatment and behavioral health treatment providers differently

2 | than medical and surgical providers in California.

3 | 45.   Defendants' practices were likewise unfair, fraudulent and unlawful

4 | under state and federal law in that they violate the PPACA, which requires, among

5 | other things, insurers to provide benefits for substance use disorder and mental

6 | health treatment and services, with no pre-existing condition exclusions and no

7 | annual or lifetime dollar amount limits on coverage of such treatment and services.

8 | 46.   Defendants' actions were further unfair, fraudulent and unlawful in that

9 | they violated other well established public policies, including those set forth in the

10 | California Unfair Insurance Practices Act ("UIPA"), as set forth in California

11 | Insurance Code sections 790, et seq.

12 | 47.   Defendants' insureds/members were also unlawfully, unfairly and

13 | fraudulently misled into believing that the insurance policies at issue would provide

14 | coverage for care supplied by out-of-network substance use disorder and mental

15 | health treatment providers such as Plaintiff.

16 | 48.   Defendants, and each of them, never intended to provide the coverage

17 | mandated by the insurance policies issued and/or administered for the benefit to

18 | their insureds/members and instead intended to not pay or to underpay substance use

19 | disorder and mental health treatment providers throughout California, including

20 | Plaintiff.  Defendants, and each of them, have ignored Plaintiff's efforts to recover

21 | payment for the substance use disorder and mental health treatment and services

22 | provided to Defendants' insureds/members, placing Plaintiff in the untenable

23 | position of being forced to file this Complaint in order to recover payment from

24 | Defendants, and each of them, under the insurance policies at issue and the law.

25 | 49.   Plaintiff is seeking relief under its direct rights, written assigned rights

26 | from patients cheated out of their insurance benefits by Defendants, and as third-

27 | party beneficiaries of its patients' policies issued and/or administered by

28 | Defendants.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

50.     Defendants have also tortuously breached the implied covenant of good faith and fair dealing in the underlying policies issued and/or administered by Defendants, which rights have been assigned to Plaintiff.

51.     The substance use disorder and mental health treatment and services at issue herein were provided by Plaintiff to patients who at all relevant times had health insurance for the treatment and services that Plaintiff provided and the policies of health insurance were issued and/or administered by Defendants, and each of them, or at the direction and under the control of Defendants.

52.     Defendants, and each of them, caused the events complained of herein to occur in and throughout the State of California.

53.     Plaintiff provides substance use disorder and mental health treatment and services to individuals in the process of recovering from mental health issues and substance use disorders.  Plaintiff's treatment includes a range of services, including PHP, IOP, and OP, counseling, behavioral therapies, and case management services.

54.     Defendants, and each of them, developed, marketed, insured and/or sold the subject health insurance policies to include coverage for substance use disorder and mental health treatment and services provided to their insureds/members by in-network providers ("INP") and out-of-network ("ONP") like Plaintiff.

55.     The insurance policies issued and/or administered by Defendants, and each of them, are industry standard indemnity health insurance policies that provide richer benefits (less out-of-pocket expense for insureds) for treatment and services that are obtained from INPs.  Such providers contract with Defendants to become part of their "network" and generally agree to accept a set reduced rate of reimbursement in exchange for steerage of patients to INP practices or facilities and payment within specified contractual timeframes.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

56.     The insurance policies issued and/or administered by Defendants, and each of them, provide for a reimbursement rate for ONP services at a lesser percentage of the overall billed charges than the 100% reimbursement rate for INP services, less the insured's co-pay, co-insurance and deductible, generally resulting in greater out-of-pocket expenses for Defendants' insureds.

57.     California law requires that the policy forms, such as those utilized in the insurance policies issued and/or administered by Defendants, and each of them, be filed with and approved by the CDI, and are generally not to be withdrawn from the insurance marketplace without an insurer meeting specific conditions.

58.     The insurance policies issued and/or administered by Defendants, and each of them, provide coverage for but not limited to the following ONP substance use disorder and mental health treatment services: outpatient office visits (psychological evaluation or therapeutic session in an office or other outpatient setting (including individual and group therapy sessions, medication management and drug therapy monitoring); outpatient services other than office visits (psychological and neuropsychological testing, intensive outpatient care program, day treatment, partial hospitalization and other outpatient services); inpatient facility; physician visit to hospital, behavioral health facility or residential treatment center; toxicology and clinical laboratory testing and screening; and inpatient detoxification.

59.     The insurance policies issued and/or administered by Defendants, and each of them, provide for the payment of services with an INP at 100% of the provider's billed charges set by contract, less the insured's co-pay, co-insurance and deductible.  Services with an ONP are reimbursed at a lesser percentage of the provider's billed charges.

60.     The insurance policies issued and/or administered by Defendants, and each of them, provide that Defendants were required to remit claim payments directly to providers when the insured assigns his or her benefits to the provider in

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 23 -
COMPLAINT

writing, and Defendants, and each of them, confirmed this during the verification of benefits process.

61.    When required by the insurance policies issued and/or administered by Defendants, and each of them, Plaintiff's standard operating procedure was to obtain prior authorization for substance use disorder and mental health treatment and services for Defendants' insureds/members.  Plaintiff's standard operating procedure also included obtaining a verification of benefits from the patient's insurance company, including Defendants, to ensure the patient is covered by the insurer and that the treatment is a covered benefit under the policy.

62.    In communication with Plaintiff, including telephone calls requesting verification of benefits, Defendants, and each of them, represented and promised to Plaintiff that the services provided to Defendants' insureds/members would be reimbursed at 70% of covered charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.

63.    Specifically, for each of the 18 patients whose substance use disorder and mental health treatment and services are at issue, Plaintiff contacted Defendants by phone and/or in writing before beginning such treatments and services. Defendants confirmed with Plaintiff that the patients, and each of them, were validly covered by their policies with Defendants, and Plaintiff informed Defendants of the proposed treatments and services of Defendants' insureds/members, including the specific services to be provided and the billing codes for the same.  Plaintiff informed Defendants to the effect that Plaintiff would agree to accept the maximum allowable fee under those polices for Plaintiff's services, which fee is equal to 70% of covered charges (minus and cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.  Defendants agreed to such terms, after which Plaintiff began treating Defendants' insureds/members.

64.    Based upon the language of the insurance policies issued and/or administered by Defendants, and each of them, and upon obtaining required prior

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

authorization and verification of benefits when necessary, valid written assignments, and promises by Defendants for proper payments to Plaintiff, Plaintiff and its patients insured by Defendants and/or with policies administered by Defendants, reasonably expected that Plaintiff's claims would be paid promptly and consistent with the law and the terms of the policies and/or the herein representations and promises made by Defendants, and each of them, to Plaintiff.

65.   Notwithstanding the required prior authorization and/or verification of benefits when necessary, valid written assignments, and Defendants' promises to Plaintiff, Plaintiff's claims for the majority of substance use disorder and mental health treatment and services provided to Defendants' insureds/members have not been paid properly and require substantial interest payments for violation of the applicable insurance policies and California insurance and managed health care laws providing for the prompt payment of claims.

66.   Plaintiff is entitled to payment for its substance use disorder and mental health treatment and services rendered to Defendants' insureds/members at the proper reimbursement rates, pursuant to valid written assignments from its patients, Defendants' promises to Plaintiff, or, at a minimum, under a theory of quantum meruit.

67.   While Defendants' breaches alleged herein involved policies issued and/or administered by one or more of the Defendants, each Defendant, upon information and belief, conceived, directed, approved, or aided and abetted the others in this bad faith scheme.

68.   In California, a health insurer must provide or arrange for the provision of access to health care services in a timely manner.  Most health insurers, including Defendants, and each of them, seek to satisfy this duty by providing an adequate network of INPs for their insureds to choose from so they may receive the necessary treatment at the lowest expense to the insurer and the insured.

69.     A "network gap" or "network insufficiency" exists in a health insurer's network when either the health insurer, or the patient, is unable to secure the services of an INP for necessary treatment.  If a network gap exists, California law requires the insurer to secure the services of an ONP so the insurer can meet its legal and contractual obligations to provide or arrange for the provision of access to health care services in a timely manner.  In addition, emergency services, and sometimes urgently needed services, must be covered by an insurer with an ONP if the insurer has no network provider to provide the needed services.

70.     California law does not give a health insurer the right or ability to unilaterally set the price it will pay an ONP that provides services to one of the insurer's insureds in order to fill a network gap.

71.     Upon information and belief, there was a network gap with respect to substance use disorder and mental health treatment providers in California to serve the tremendous number of Defendants' insureds/members needing such treatment and services, due in large part to the opioid and addiction epidemic in California, and across the nation.

72.     Upon information and belief, there was a network gap with respect to substance use disorder and mental health treatment centers required to treat Defendants' insureds/members, which caused some of Defendants' insureds/members to obtain the services of Plaintiff, an ONP.

73.     In the managed health care industry, a "verification" of an insured's coverage for the contemplated treatment, or an "authorization" for such treatment, is understood by both the insurers and providers to be an agreement by the insurers to pay for such treatment.  For INPs, it is an agreement by the insurers to pay those providers based on previously negotiated rates between the insurer and those providers.  For ONPs, it is an agreement by the insurers to pay those providers at their fully billed charges.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

74.     Plaintiff, as an ONP, after obtaining preauthorization and/or verification of coverage when necessary, provided necessary treatment and services to Defendants' insureds/members due to a network gap and is therefore entitled to recover payment for its services at its fully billed charges.

75.     While Plaintiff has repeatedly demanded payment in full for the services provided to Defendants' insureds/members, Defendants, and each of them, have denied, delayed and incorrectly issued payment for Plaintiff's claims even after requested records were copied, sent and received by Defendants.

76.     Defendants, and each of them, would respond to Plaintiff's inquiries about the delay or errors in payment with false promises that payment would be made and/or a multitude of excuses.  Regardless of the excuses made by Defendants, and each of them, Plaintiff did not receive proper claim payments for the substance use disorder and mental health treatment and services provided to Defendants' insureds/members.

77.     Upon information and belief, Defendants, and each of them, realized an immediate positive financial impact as a result of their misconduct alleged herein, cessation substance use disorder and mental health treatment and laboratory claims payments, and forcing treatment centers, like Plaintiff, through an expensive, administratively burdensome and indiscriminate audit, and not paying claims that are due and owing under the policies and the law.

78.     Upon information and belief, Defendants, and each of them, undertook the actions alleged herein with the intent and designed purpose of not paying substance use disorder and mental health treatment and claims that are due and owing under the law and the policies, as part of a pattern and practice by Defendants, and each of them, that is unlawful, unfair and fraudulent, and thus violates, inter alia, California's UCL, state and federal regulations and the MHPAEA and PPACA.

COMPLAINT

79.     Upon information and belief, Defendants, and each of them, undertook the actions alleged herein, in violation of numerous provisions of California's UIPA, without limitation, numerous subsections of California Insurance Code section 790.03, including misrepresentations to patients and providers, failing to acknowledge and act reasonably promptly in response to communications, failing to adopt and implement reasonable standards for investigations, not attempting in good faith to effectuate prompt, fair and equitable settlement of claims, and compelling providers to institute litigation to recover policy benefits owed.

80.     Upon information and belief, Defendants, and each of them, developed a mechanism through their superior economic might to oppress treatment centers and laboratories, including Plaintiff, forcing Plaintiff and other treatment centers and laboratories into a position where they can no longer afford to accept patients insured by Defendants and/or with policies administered by Defendants, and resulting in significant and undue hardship to Plaintiff (and the patient-insureds) and interference with Plaintiff's contractual relationships with its patients and its prospective economic advantage.  And Defendants, and each of them, are is doing this in the middle of an opioid and addiction epidemic!

## FIRST CAUSE OF ACTION

### Breach of Written Contract

### Against All Defendants

81.     Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

82.     Plaintiff provided medically necessary, verified, preauthorized and covered substance use disorder and mental health treatment and services to 18 individuals with health insurance that was sold, insured and/or administered by Defendants.  The policies pay benefits for out-of-network substance use disorder and mental health treatment, including, but not limited to, detoxification and residential treatment, PHP, IOP, OP, counseling and behavioral therapies, and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

clinical laboratory services, at 70% of covered charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%. Defendants confirmed with Plaintiff through the required verification of benefits process and, if necessary, the preauthorization process, that each of the patient-insureds and their respective treatments were covered by health insurance policies issued and/or administered by Defendants and that Plaintiff would be properly paid for treating Defendants' insureds/members. At all times relevant herein, Defendants knew that Plaintiff was treating, and would continue to treat, Defendants' insureds/members, and that Plaintiff was not treating Defendants' insureds/members for free.

83.    As a condition of providing such treatment and services, Plaintiff obtained a written assignment of benefits from each of the 18 patient-insureds at issue, by which Defendants' insureds/members intended to, and did, assign to Plaintiff not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. As assignee of the patients' benefits under the policies, Plaintiff is entitled to be paid for the services rendered based on the existence and terms of the insurance policies that cover the patients. Each of the policies at issue herein provide for the same coverages, reimbursement rates and coinsurance percentages, deductibles and out-of-pocket maximums.

84.    The policies provide in relevant part that benefits are payable for the covered substance use disorder and mental health treatment and services provided by Plaintiff to Defendants insureds/members, and subject to specific conditions, exclusions and limitations, none of which apply, and applicable maximum reimbursement amounts. As stated herein, benefits for a covered expense for covered services, including mental health and substance use disorder treatment and laboratory services, are paid at 70% of the billed charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Defendants pay 100%.

2         85.    After providing covered substance use disorder and mental health

3    treatment and services to Defendants' insureds/members, Plaintiff submitted

4    numerous claims for reimbursement to Defendants pursuant to the terms of

5    Defendants' policies.  Defendants were obligated to pay Plaintiff 70% of its billed

6    charges (minus any cost-sharing amounts) until the deductible/out-of-pocket

7    maximum is met at which time Defendants pay 100%.  Instead, Defendants paid

8    Plaintiff  1.3% of the covered expenses for the claims.

9         86.    Plaintiff is also an express and intended third-party beneficiary of the

10   written contracts (the policies) between Defendants and the insured patients treated

11   by Plaintiff, and is entitled to recover on that basis.

12        87.    Defendants and their insureds intended that Plaintiff directly benefit

13   from the contracts and the contracts indicate the intent to benefit Plaintiff by

14   payment for the services provided to Defendants' insureds.

15        88.    The policies issued and/or administered by Defendants provide their

16   insureds/members the option of seeking treatment and services with Defendants'

17   INPs or choosing their own ONPs, like Plaintiff.  The policies also specifically

18   provide for the payment of benefits for ONPs, like Plaintiff, who provide medically

19   necessary services; and Defendants confirmed the out-of-network benefits that

20   Defendants pay to out-of-network providers, like plaintiff, at all levels of care.

21   Although the policies issued and/or administered by Defendants may incentivize

22   their insureds to seek treatment with INPs, those policies explicitly express

23   Defendants' intent to benefit ONPs, like Plaintiff.

24        89.    The policies issued and/or administered by Defendants further express

25   Defendants' intent to benefit ONPs, like Plaintiff, insofar as the policies expressly

26   incorporate by reference California regulations requiring insurers, like Defendants,

27   to provide an adequate network of INPs and, in the event of a "network inadequacy"

28   or "network gap," requiring insurers, like Defendants, to pay for the required care

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 30 -

COMPLAINT

1  with available and accessible ONPs, like Plaintiff,  with the patient responsible for

2  paying only cost-sharing in an amount equal to the cost-sharing they would have

3  paid for provision of that or a similar service by an INP (Cal. Code Regs. tit. 10, §

4  2240.1(e)).

5       90.    Defendants' intent to benefit ONPs, like Plaintiff, by the terms of the

6  insurance policies is further evidenced by the conduct of the Defendants, who issued

7  payments to ONPs, including Plaintiff, for the medically necessary services

8  rendered to their insureds, in accordance with the terms of the policies, until in or

9  around 2015, when the Defendants, as part of their scheme to decrease their costs on

10  substance use disorder and mental health treatment claims and laboratory services,

11  conspired, concocted and implemented their plans to significantly decrease, and in

12  some cases completely ceased reimbursing, ONPs providing substance use disorder

13  and mental health treatment and laboratory services, including Plaintiff.

14      91.    Plaintiff provided covered, verified, preauthorized and medically

15  necessary substance use disorder and mental health treatment and services to

16  Defendants' insureds/members at great expense to Plaintiff.  After providing those

17  services, Plaintiff submitted its claims to Defendants, requesting compensation for

18  the care and treatment provided to the patient-insureds, and complied with all terms

19  and conditions of the policies.

20      92.    Defendants, and each of them, however, failed and refused to comply

21  with their obligations under the law and the policies and either paid no or inadequate

22  benefits for the substance use disorder and mental health treatment and services that

23  Plaintiff provided to Defendants' insureds/members.

24      93.    Upon information and belief, there is no legally operative term in the

25  policies that would justify Defendants' failure to pay the full benefits owed to

26  Plaintiff for the substance use disorder and mental health treatment and services that

27  Plaintiff provided to Defendants' insureds/members in good faith.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

94.   Plaintiff has performed all duties required of it under the insurance policies, except as excused by Defendants' material breaches.

95.   Defendants, and each of them, however, breached the insurance policies by the conduct alleged herein, including without limitation withholding of proper claim payments, making unreasonable demands on Plaintiff, not engaging in a prompt, full and complete investigation of Plaintiff's claims, and interpreting the policies in an unduly restrictive manner so as to deny coverage and benefits when, in fact, coverage exists and benefits are owed.

96.   As a direct and proximate result of Defendants' breaches, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, and is entitled to statutory and prejudgment interest and attorney's fees against Defendants, and each of them.  Under this cause of action, Plaintiff seeks to recover the benefits payable under the policies between the patients and Defendants, or equal to approximately 70% of Plaintiff's billed charges (minus any cost-sharing amounts) until the subject deductibles/out-of-pocket maximums are met at which time Defendants pay and 100%.

97.   As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and continues to incur economic loss, including the benefits owed, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.  Plaintiff is also entitled to statutory and prejudgment interest against Defendants.

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### Against All Defendants

98.   Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

99.   As alleged herein, Plaintiff is an assignee and intended beneficiary of its patients' policies issued and/or administered by Defendants and the rights

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

conferred thereunder.

100.   Each policy contains an implied covenant of good faith and fair dealing that obligates each party to do nothing to injure the right of the other party to receive the benefits of the agreement.

101.   Plaintiff provided covered, verified, preauthorized and medically necessary substance use disorder and mental health treatment and services to Defendants' insureds/members with the understanding and expectation that Defendants would act in good faith and deal fairly with Plaintiff pursuant to the policies and the law.

102.   Defendants, and each of them, however, tortuously breached the policies and the implied covenant of good faith and fair dealing by the conduct alleged herein, including without limitation withholding of proper claim payments from Plaintiff, making unreasonable demands on Plaintiff, not engaging in a prompt, full and complete investigation of Plaintiff's claims, and interpreting the policies in an unduly restrictive manner so as to deny coverage and benefits when, in fact, coverage exists and benefits are owed to Plaintiff, fraudulently representing to Plaintiff that Defendants would pay the claims in accordance with the policies, fraudulently misrepresenting the terms of the policies, and forcing Plaintiff to initiate litigation to recover the policy benefits owed, failing to abide by the rules and regulations promulgated by the CDI and the DMHC, and by other acts and omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

103.   Upon information and belief, the conduct of Defendants, and each of them, as alleged herein constitutes part of an institutional illegal pattern and practice of bad faith and unlawful insurance practices by Defendants, and each of them.

104.   Defendants' conduct constitutes a continuing tort that is causing Plaintiff continued damages.

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

105.   The conduct of Defendants as alleged herein was undertaken by Defendants' officers, directors or managing agents who were responsible for supervision, operation, reports, communication and decisions in connection with the coverage, access, claims and benefits at issue herein.  The conduct of said officers, directors and managing agents, and of other employees, representatives and agents, was undertaken on behalf of Defendants, which had advance knowledge of the actions and conduct of said individuals whose conduct and actions were authorized, ratified and approved by officers, directors or managing agents of Defendants, and each of them.

106.   As a direct and proximate result of Defendants' breaches, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, and is entitled to statutory and prejudgment interest against Defendants, and each of them.  Under this cause of action, Plaintiff seeks to recover the benefits payable under the policies between the patients and Defendants, or equal to approximately 70% of covered expenses (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%, as well as tort damages that arise from Defendants' bad faith breaches.

107.   As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and continues to incur economic loss, including the benefits owed, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

108.   As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and continues to incur attorney's fees and costs as a result of efforts to secure the insurance benefits owed, in an amount according to proof.

## THIRD CAUSE OF ACTION

### Breach of Implied Contract

### Against All Defendants

109.   Plaintiff incorporates by reference all allegations set forth in each of the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

paragraphs above as if fully set forth herein.

110.   Plaintiff, as an ONP, provided medically necessary and covered substance use disorder and mental health treatment and services to patients who were insured under insurance policies issued and/or administered by Defendants, and each of them, preceded by authorization and verification of benefits by Defendants.

111.   Consistent with the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment and services with the expectation, which was fully and clearly understood by Defendants and promised by Defendants, and each of them, that Plaintiff would be compensated for such services.  Defendants knew at all times that Plaintiff was not treating Defendants insureds/members for free.

112.   Plaintiff, as an ONP, must often decide on short notice whether and to what extent it can treat a patient.  Requiring such providers to, in effect, make an on-the-spot legal analysis whether the representations, statements and promises made by health care plans (like Defendants) to authorize treatment, verify benefits, and promise payment  constitute binding contract "acceptances" versus supposedly non-binding "authorizations" would jeopardize the safety of patients, and impose an unfair risk on health care providers that they would not get paid for providing treatment and services that are medically necessary.  For this reason, the California Legislature enacted Health & Safety Code section 1371.8, which states in relevant part:

> A health care service plan that authorizes a specific type of treatment by a provider **shall not rescind or modify this authorization after the provider renders the health care service in good faith and pursuant to the authorization for any reason**, including, but not limited to, the plan's subsequent rescission, cancellation, or modification of the enrollee's or subscriber's contract or the plan's subsequent determination that it did not make an accurate determination of the enrollee's or subscriber's eligibility…. (Emphasis added.)

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

113.   In addition to reliance upon the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment and services with the expectation that Plaintiff would be compensated for such services based upon the prior course of conduct of Defendants and Defendants' promises, and each of them, and Defendants confirmed this with Plaintiff during the verification of benefits process for each of the treatment insureds/members at issue herein.

114.   Defendants, and each of them, were fully aware of the dollar amounts charged by Plaintiff for the subject treatment and services and had previously authorized, verified and confirmed the benefits payable to Plaintiff for such treatment and services.  Defendants, and each of them, were also aware that Plaintiff did not provide the subject treatment and services for free, and that Plaintiff would submit its billed charges for said services and expect to be compensated, which Defendants promised.  Defendants, and each of them, also knew Plaintiff was not a contracted in-network provider who had agreed to accept any pre-negotiated contract rates.  With such knowledge, Defendants, and each of them, issued payments for the subject treatment to ONPs, including Plaintiff.

115.   Whereas payment by Defendants, and each of them ,was always sporadic and often inadequate, in or around 2015, and as part of their scheme to decrease their costs of substance use disorder and mental health treatment and laboratory claims, Defendants, and each of them, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, ONPs providing substance use disorder and mental health treatment and services, including Plaintiff.

116.   Accordingly, by virtue of Defendants, and each of them, authorizing, verifying and confirming the benefits for the subject treatment provided by Plaintiff; by the trade custom and usage associated with prior authorization and verification of benefits; by Defendants' promises to pay Plaintiff; and by Defendants' prior course

COMPLAINT

of conduct and confirmations, the parties thus created an implied contract, through words and conduct, that Defendants, and each of them, would pay Plaintiff for treatment and services rendered to Defendants' insureds/members, for the reasonable value of such treatment and services.

117.    Defendants are also liable to pay Plaintiff for treating the 18 patients and the claims at issue due to a contract implied in law based on the network gap concept as discussed hereinabove.  California law requires that where health insurance carriers such as Defendants cannot provide their insureds/members access to the needed health care providers on an "in-network" basis, the carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its fully-billed charges (since the patients would be responsible for only their relatively nominal co-payments), or in any case substantially more than the contracted rates agreed to by an in-network provider.

118.    Upon information and belief, there was a network gap with respect to the 18 patients payments for whom are at issue in this action, since Defendants failed to arrange for any in-network providers in the patients' localities who were willing and able to provide the substance use disorder and mental health treatment and services required by those patients.  Indeed, if Defendants objected to their insureds/members obtaining treatment from an ONP such as Plaintiff, why did they refuse or otherwise fail to refer those patients to an INP?  The only reasonable inference is that there were no such INP's who were in the position to treat the patients at issue.  As a result, those patients had no choice but to seek the services and treatments rendered by Plaintiff, who did so in good faith and in reliance on Defendants' expected compliance with the applicable California health care law as it pertains to a "network gap."

119.    Plaintiff has performed all duties required of it under the implied

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

contract, except as excused by Defendants' material breaches.

120.    Defendants, and each of them, however, breached the implied contract by the conduct alleged herein, including without limitation the withholding of proper claim payments.

121.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, and is entitled to statutory and prejudgment interest and attorney's fees against Defendants.  In this cause of action, Plaintiff is seeking to recover reimbursements regardless of what the policies between Defendants and their insureds/members would have provided for the same treatments and services; namely, the reasonable value of such services and treatments, and/or the payments owing to Plaintiff under California law based on the existence of a "network gap" as to some or all of the 18 patients at issue.

122.    As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and continues to incur economic loss, including the benefits owed, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

## FOURTH CAUSE OF ACTION

### Breach of Oral Contract

### Against All Defendants

123.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

124.    As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants, and each of them, confirmed and orally promised to pay Plaintiff for the substance use disorder and mental health treatment and services provided to Defendants' insureds/members on the same terms as provided for in the policies between Defendants and their insureds/members; specifically, payments to Plaintiff

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

equal to approximately 70% of covered expenses (minus any cost-sharing amounts) until the subject deductibles/out-of-pocket maximums are met at which time Defendants pay 100%.

125. The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

126. Plaintiff has performed all duties required of it under the oral contract, except as excused by Defendants' material breaches.

127. Defendants and each of them, however, breached the oral contract by the conduct alleged herein, including without limitation the withholding of proper claim payments from Plaintiff.

128. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, and is entitled to statutory and prejudgment interest and attorney's fees against Defendants. Under this cause of action, Plaintiff seeks to recover the benefits orally promised, which are equal to approximately 70% of covered expenses (minus any cost-sharing amounts) until the subject deductibles/out-of-pocket maximums are met at which time Defendants pay 100%.

129. As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and continues to incur economic loss, including the benefits owed, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

## FIFTH CAUSE OF ACTION

### Promissory Estoppel

### Against All Defendants

130. Plaintiff incorporates by reference all allegations set forth in each of the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

paragraphs above as if fully set forth herein.

131.   As part of verifying benefits and authorizing the substance use disorder and mental health treatment and services when necessary, and in multiple communications following admissions and the submission of claims, Defendants confirmed and expressed a clear promise to pay Plaintiff on the same terms as provided for in the policies between Defendants and their insureds/members; specifically, payments to Plaintiff equal to approximately 70% of covered expenses (minus any cost-sharing amounts) until the subject deductibles/out-of-pocket maximums are met at which time Defendants pay 100%.

132.   The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

133.   Plaintiff relied on Defendants' promises in providing substance use disorder and mental health treatment and services to Defendants' insureds/members, and Defendants, and each of them, should reasonably have expected to induce Plaintiff's action in providing said treatment and services.

134.   Plaintiff has suffered substantial detriment in reliance upon Defendants' promises in providing substance use disorder and mental health treatment and services to Defendants' insureds/member, including without limitation the benefits owed, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

135.   As a direct and proximate result of Defendants' breaches of their promises, Plaintiff is also entitled to statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

COMPLAINT

## SIXTH CAUSE OF ACTION

### Quantum Meruit

### Against All Defendants

136.   Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

137.   Plaintiff, as an ONP, provided substance use disorder and mental health treatment and services for patients who were insured under insurance policies issued and/or administered by Defendants, and each of them, preceded by authorization, confirmation and verification of benefits by Defendants.

138.   Consistent with the trade custom and usage associated with prior authorization, confirmation and verification of benefits, Plaintiff provided the subject substance use disorder and mental health treatment and services to Defendants' insures/members with the expectation, which was fully and clearly understood by Defendants and promised by Defendants, and each of them, that Plaintiff would be compensated for such treatment and services provided to Defendants' insureds/members.

139.   Plaintiff, as an ONP, must often decide on short notice whether and to what extent it can treat a patient.  Requiring such providers to, in effect, make an on-the-spot legal analysis whether the representations, statements and promises made by health care plans (like Defendants) to authorize treatment, verify benefits and promise payment constitute binding contract "acceptances" versus supposedly non-binding "authorizations" would jeopardize the safety of patients, and impose an unfair risk on health care providers that they would not get paid for providing treatments that are medically necessary.  For this reason, the California Legislature enacted Health & Safety Code section 1371.8, which states in relevant part:

> A health care service plan that authorizes a specific type of treatment by a provider **shall not rescind or modify this authorization after the provider renders the health care service in good faith and pursuant to the authorization for any reason,** including, but not limited

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 41 -

COMPLAINT

to, the plan's subsequent rescission, cancellation, or modification of the enrollee's or subscriber's contract or the plan's subsequent determination that it did not make an accurate determination of the enrollee's or subscriber's eligibility…. (Emphasis added.)

140.   In addition to reliance upon the trade custom and usage associated with prior authorization, confirmation and verification of benefits, Plaintiff provided the subject treatment and services to Defendants' insureds/members with the expectation that Plaintiff would be compensated for such treatment and services based upon the prior course of conduct of Defendants and Defendants' promises, and each of them, and Defendants confirmed this with Plaintiff during the verification of benefits process for each of the treatment insureds/members at issue herein.

141.   Defendants, and each of them, were fully aware of the dollar amounts charged by Plaintiff for the subject treatment and services and had previously authorized, confirmed and verified benefits for such treatment and services. Defendants, and each of them, were also aware that Plaintiff did not provide the subject treatment and services for free, and that Plaintiff would submit its billed charges for said treatment and services and expect to be compensated, which Defendants' promised to pay. Defendants, and each of them, also knew Plaintiff was not a contracted in-network provider who had agreed to accept any pre-negotiated contract rates. With such knowledge, Defendants, and each of them, issued payments for the subject treatment and services to ONPs, including Plaintiff.

142.   Whereas payment by Defendants, and each of them, was always sporadic and often inadequate, in or around 2015, and as part of their scheme to decrease their costs of substance use disorder and mental health treatment and laboratory claims, Defendants, and each of them, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, ONPs providing substance use disorder and mental health

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   treatment and services, including Plaintiff.

2   143.   Defendants, and each of them, were at all times obligated under

3   California law to provide or arrange for the provision of access for their insureds to

4   health care services in a timely manner, and sought to satisfy this duty by providing

5   a network of INPs for their insureds to choose from so they may receive the

6   necessary treatment and services at the lowest expense to the insurer and the

7   insured.

8   144.   Defendants are also liable to pay Plaintiff for treating the 18 patients

9   and claims at issue due to a contract implied in law based on the network gap

10  concept as discussed hereinabove.  California law requires that where health

11  insurance carriers such as Defendants cannot provide their insureds/members access

12  to the needed health care providers on an "in-network" basis, the carriers shall pay

13  any "out-of-network" provider such as Plaintiff the amounts necessary to limit the

14  out-of-pocket cost to the patient as if an in-networker provider had provided the

15  same treatment and services.  In effect, this makes an out-of-network provider

16  eligible to receive almost 100 percent of its fully-billed charges (since the patients

17  would be responsible for only their relatively nominal co-payments), or in any case

18  substantially more than the contracted rates agreed to by an in-network provider.

19  145.   Upon information and belief, there was a network gap with respect to

20  the 18 patients payments for whom are at issue in this action, since Defendants

21  failed to arrange for any in-network providers in the patients' localities who were

22  willing and able to provide the substance use disorder and mental health treatment

23  and services required by those patients.  Indeed, if Defendants objected to their

24  insureds/members obtaining treatment from an ONP such as Plaintiff, why did they

25  refuse or otherwise fail to refer those patients to an INP?  The only reasonable

26  inference is that there were no such INP's who were in the position to treat the

27  patients at issue.  As a result, those patients had no choice but to seek the treatment

28  and services rendered by Plaintiff, who did so in good faith and in reliance on

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 43 -
COMPLAINT

1  Defendants' expected compliance with the applicable California health care law as it
2  pertains to a "network gap."

3      146.   Defendants, and each of them, by words and conduct, requested that
4  Plaintiff provide medically necessary substance use disorder and mental health
5  treatment and services to their insureds/members, which benefitted Defendants in
6  terms of meeting their legal and contractual obligations to provide or arrange for the
7  provision of access to health care services in a timely manner.

8      147.   As part of verifying benefits and authorizing treatment when necessary,
9  and in multiple communications following admissions and the submission of claims,
10  Defendants, and each of them, knew that Plaintiff was providing substance use
11  disorder and mental health treatment and services to Defendants' insureds/members
12  and promised to pay Plaintiff for the treatment and services and thereafter enjoyed
13  the benefit of Plaintiff providing the services Defendants were obligated to ensure
14  for their insureds/members.

15      148.   The persons answering calls and corresponding on behalf of
16  Defendants, and each of them, were upon information and belief the agents and
17  employees of Defendants, and each of them, and in doing the things herein alleged
18  were acting within the course and scope of such agency and employment and with
19  the permission and consent of Defendants, and each of them.

20      149.   Plaintiff is entitled to be paid the reasonable and customary fees for the
21  substance use disorder and mental health treatment and services provided to
22  Defendants' insureds/members, without regard to the payment provisions in
23  Defendant's policies and/or the payments owing to Plaintiff under California law
24  based on the existence of a "network gap" as to some or all of the 18 patients at
25  issue.

26      150.   The fair and reasonable value of the non-reimbursed treatment and
27  services that Plaintiff provided to Defendants' insureds/members is nearly a million
28  dollars.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

1   151.   Defendants, and each of them, however, have failed and refused, and
2   continue to refuse, to reimburse Plaintiff for the reasonable and customary value of
3   Plaintiff's services as required by law.

4   152.   As a direct and proximate result of Defendants' failure to pay for
5   services rendered, Plaintiff has suffered and continues to suffer general and
6   incidental damages according to proof, and is entitled to statutory and prejudgment
7   interest and attorney's fees against Defendants, and each of them.

8   153.   As a direct and proximate result of Defendants' failure to pay for the
9   treatment and services rendered to Defendants' insureds/members, Plaintiff has
10  incurred and continues to incur economic loss, including the benefits owed, the
11  interruption in Plaintiff's business, lost business opportunities, lost profits and other
12  consequences, all according to proof.

## SEVENTH CAUSE OF ACTION

### Unfair Competition

### Against All Defendants

16  154.   Plaintiff incorporates by reference all allegations set forth in each of the
17  paragraphs above as if fully set forth herein.

18  155.   The conduct of Defendants, and each of them, as alleged herein not
19  only constitutes common law bad faith, but also violates state and federal law,
20  regulations and policies, and thus constitutes unlawful, unfair, and fraudulent
21  business practices in violation of the UCL (Bus. & Prof. Code §§ 17200 et seq.).

22  156.   Plaintiff has suffered injury in fact and has lost money or property as a
23  result of acts of unfair competition by Defendants, and each of them, as alleged
24  herein.

25  157.   Plaintiff is entitled to injunctive relief under the UCL and, as such,
26  Plaintiff seeks a temporary restraining order, a preliminary injunction, and a
27  permanent injunction, all enjoining Defendants, and each of them, from
28  unjustifiably withholding proper payment of claims.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 45 -

158. Plaintiff is further entitled to an order appointing a receiver over Defendants, and each of them, and restoring to Plaintiff any money or property that was acquired through the foregoing acts of unfair competition (Cal. Bus. & Prof. Code § 17203).

## **PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, and that the Court award the following relief:

1. For compensatory, general and special damages in amounts to be proven at trial;
2. For statutory and prejudgment interest;
3. For costs incurred in connection with this lawsuit;
4. For attorney's fees;
5. For injunctive and equitable relief; and
6. For all other relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff 12 South, LLC hereby requests a trial by jury for all claims triable by jury.


Dated:  February 19, 2020          **CALLAHAN & BLAINE, APLC**

By: _____
     Damon D. Eisenbrey
     Attorneys for Plaintiff 12 South, LLC

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM